986 So.2d 875 (2008)
STATE of Louisiana
In the Interest of S.C.M. and H.L.G.
No. 43,441-JAC.
Court of Appeal of Louisiana, Second Circuit.
June 4, 2008.
*876 Brian C. McRae, for Appellant, B.E.M.
Audie L. Jones, Shreveport, for Appellee, State of Louisiana, DOSS.
Steven R. Thomas, Mansfield, for Appellee, S.C.M. and H.L.G.
Joseph D. Toups, Jr., for Appellee, S.M.
David S. Kendrick, Natchitoches, for Appellee, J.G.
Before WILLIAMS, MOORE and LOLLEY, JJ.
WILLIAMS, J.
The defendant, B.E.M., appeals the trial court's judgment terminating her parental rights to her children, S.C.M. and H.L.G. For the following reasons, we affirm the trial court's judgment.

FACTS
On January 21, 2004, the Louisiana Department of Social Services, Office of Community Services, Parish of DeSoto ("OCS") received a report that B.E.M. was using illegal drugs and failing to provide adequate care for her children, ages five, three and two months.[1] During the investigation of the report, B.E.M. refused to submit to a drug test and admitted that she had been using marijuana. Following an investigation, all three children, R.B.M., S.D.M. and S.C.M., were taken into state custody and adjudicated in need of care.[2] The children remained in state custody for over a year and were returned to their mother on March 30, 2005.[3]
On July 5, 2006, OCS received another report of illegal drug use by B.E.M. and her live-in companion, J.G. By this time, B.E.M. had a fourth child, H.L.G., who was fathered by J.G. The children's ages were seven, six, two and six months. During the investigation, B.E.M. admitted that she used marijuana, pain pills and that she was addicted to methadone, for which she had no prescription. She also admitted that she had left the three older children home alone while she ran errands. J.G. also admitted to using marijuana, methadone and "pain pills." The case worker discovered that the couple was unable to pay their bills due to their substance abuse and that the "deplorable" condition of the house presented health and safety hazards.
The case worker also noted that the two older children, R.B.M. and S.D.M., were able to describe the drugs used by their mother and J.G. They stated that they could smell "weed" when their mother smoked it. The children informed the case worker that their mother had left them home alone on at least two occasions and reported that J.G. had hit and choked them. The allegations were verified and the children were taken into protective custody on July 5, 2006 and adjudicated in need of care. S.D.M. and R.B.M. were placed with their paternal grandparents.[4] *877 S.C.M. and H.L.G. were placed in foster care.[5]
On October 1, 2007, the state filed a petition for authorization and order to file a petition for the termination of the parental rights of B.E.M., S.M. and J.G. Following a hearing held on January 11, 2008, the trial court ordered that B.E.M.'s parental rights to S.C.M. and H.L.G., be terminated.[6] The court stated:
[I]t's been in excess of one year since the children were taken into care ... pursuant to a valid court order.... Persistent drug use, failure to complete psychological evaluations and other things clearly testified to, clear and convincing evidence that they have failed to comply with my court orders. Now the other thing is whether termination of parental rights is in the best interest of the children and in this case, I don't think there's any question about that. Specifically, to enumerate for the record, the fact that I find that there is no substantial, in accordance with law, that there is no substantial or reasonable expectation that the pattern would change.... This is proven by objective pattern throughout this entire history. Particularly with regard to [B.E.M.], literally since every one of her children have been born I have been dealing with this.... [S]he has chosen drugs over her children.
B.E.M. appealed the trial court's ruling.[7]

DISCUSSION
B.E.M. contends the state failed to meet its burden of proving that there is no reasonable expectation of reformation in the foreseeable future, pursuant to LSA-Ch.C. art. 1015(1) and (5). She also contends the state failed to meet its burden of proving that there has been no substantial parental compliance with the case plan.
It is well established that a parent has a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with his or her children. State in the Interest of A.C., 93-1125 (La.1/27/94), 643 So.2d 719, cert. denied, 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995); State ex rel. C.M.M. v. T.P.M., 42,238 (La.App. 2d Cir.5/9/07), 957 So.2d 330. This parental interest includes the companionship, care, custody and management of his or her children. Lassiter v. Dept. of Social Svcs., 452 U.S. 18, 27, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640 (1981); State in the Interest of A.C., supra. Congruent with the parental interest, the state has a legitimate interest in limiting or terminating parental rights under certain conditions. State in the Interest of A.C., supra; State ex rel. C.M.M., supra.
Termination of parental rights is a severe and terminal action, so the legislature has mandated that in order to terminate these rights, the state must satisfy an onerous burden of proof. Namely, the state bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. LSA-Ch.C. art. 1035; State ex rel. C.M.M., supra; State in Interest of D.G. v. Danny G., 30,196 (La.App. 2d Cir.10/29/97), 702 So.2d 43.
*878 LSA-Ch.C. art. 1015 provides, in pertinent part:
The grounds for termination of parental rights are:
* * *
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.
* * *
Although there are seven statutory grounds for involuntary termination of parental rights set forth in LSA-Ch.C. art. 1015, only one ground need be established. State ex rel. SNW v. Mitchell, 2001-2128 (La.11/28/01),5 800 So.2d 809; State ex rel. C.M.M., supra. Pursuant to the clear and convincing proof standard, the state must show that the parents' failure to comply with the enumerated condition is highly probable. State ex rel. C.M.M., supra; State in the Interest of Q.P., 94-609 (La. App. 3d Cir.11/2/94); 649 So.2d 512.
Once a ground for termination has been established, the judge may terminate parental rights if the termination is in the best interest of the child. LSA-Ch.C. art. 1039. The trial court's factual findings, including the finding that a parent is unfit and there is no reasonable expectation of reformation, will not be set aside in the absence of manifest error. State ex rel. C.M.M., supra; State, Dept. of Social Services ex rel. D.L.F. v. Phillips, 34,645 (La. App. 2d Cir.4/4/01), 785 So.2d 155.
LSA-Ch.C. art. 1036 provides, in pertinent part:
* * *
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
* * *
(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
* * *
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, *879 based upon expert opinion or based upon an established pattern of behavior.
* * *
The issue of parental compliance with a case plan, the parent's expected success of rehabilitation, and the expectation of significant improvement in the parent's condition and conduct are questions of fact in a proceeding for termination of parental rights. An appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. State ex rel. C.M.M., supra; State ex rel. S.S.S., 39,047 (La.App. 2d Cir.8/18/04), 880 So.2d 153.
Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the state can take against its citizens. However, the primary concern of the courts and the state remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the state. State ex rel. J.M., 2002-2089 (La.1/28/03), 837 So.2d 1247; State in the Interest of S.M.W., XXXX-XXXX (La.2/21/01), 781 So.2d 1223.
Children have a need for permanency. Forcing children to remain in foster care indefinitely, when there is no hope of reuniting them with their families, runs afoul of the state and federal mandates to further the best interests of the child. State ex rel. J.M., supra; State ex rel. C.M.M., supra.
In the instant case, Tiffney Petite,[8] the family's foster care case manager, testified that the case plan required B.E.M. to: (1) attend parenting classes; (2) attend anger management classes; (3) submit to a substance abuse assessment and follow the recommendations; (4) submit to random drug testing; (5) remain drug-free for at least six months; (6) inform OCS of her whereabouts and circumstances; (7) financially support her children by paying child support as ordered; (8) attend domestic violence counseling; (9) maintain a stable, safe home and maintain all utilities; (10) visit the children in accordance with the visitation schedule; and (11) undergo a mental health evaluation and follow the recommendations.
Ms. Petite testified that B.E.M. completed the anger management and parenting classes and that she visited the children. However, B.E.M. continued to use illegal drugs and refused to submit to random drug testing on several occasions. On April 3, 2007, she tested positive for marijuana and opiates and admitted to using Lortab without a prescription. On December 10, 2007, she refused to submit to a drug test, admitting to the use of marijuana and opiates. Ms. Petite also testified that B.E.M. had not sought treatment for substance abuse since December 2006. She stated that based on B.E.M.'s past conduct and her history of substance abuse, there was no hope that B.E.M. would rehabilitate in the future. Ms. Petite also testified that S.C.M. and H.L.G. had been placed with the same foster parents, who were willing to adopt them. Ms. Petite opined that it was in the best interest of the children to be free for adoption.[9]
B.E.M.'s testimony corroborated Ms. Petite's testimony. B.E.M. admitted that *880 her drug use was the primary reason that she could not be reunified with her children. She stated that she continued to use drugs, knowing that parental termination proceedings had been instituted against her. She acknowledged that she had used drugs in December 2007, less than one month before the termination hearing, but she indicated that she needed "more time" to complete her case plan.
The record demonstrates that OCS has had a long history of providing assistance to B.E.M. and her children, all of whom have been in and out of foster care most of their lives. We acknowledge that B.E.M. complied with some aspects of her case plan and that she desires a continued relationship with her children. However, we cannot ignore the fact that she has demonstrated an inability to remain free from drug use to adequately care for her children. B.E.M. has admittedly continued to use drugs and has been noncompliant with the recommendations with regard to her substance abuse. Accordingly, we conclude that the trial court did not err in finding that the state proved by clear and convincing evidence that B.E.M. failed to comply with her case plan, there was no reasonable expectation of significant improvement in her condition and conduct in the future, and the termination of her parental rights was in the best interest of the children.

CONCLUSION
For the reasons set forth herein, we affirm the judgment of the trial court, terminating the parental rights of B.E.M. to S.C.M. and H.L.G. Costs of this appeal are assessed to B.E.M.
AFFIRMED.
NOTES
[1] The OCS was familiar with B.E.M. because her two older children, R.B.M. and S.D.M., had previously been taken into state custody due to her substance abuse.
[2] At the time, S.C.M.'s father, S.M., was incarcerated. D.M., the father of R.B.M. and S.D.M., was addicted to drugs, had no stable residence and was unable to provide care for his children.
[3] OCS became involved with the family again on October 26, 2005. OCS received a complaint of physical abuse of R.B.M. by B.E.M., which left the child with bruises and marks. OCS validated the complaint and provided B.E.M. with counseling and parenting instructions.
[4] On October 30, 2006, state custody of S.D.M. and R.B.M. was vacated and guardianship was granted to their paternal grandparents.
[5] According to the brief filed by S.M., S.C.M. and H.L.G. have been placed in the foster care of his maternal aunt and her husband.
[6] The court also terminated the rights of S.M. and J.G. Neither appealed the judgment.
[7] Although S.M. did not appeal the judgment, he filed a brief in which he assumed the position of appellee and asked this court to affirm the trial court's judgment terminating B.E.M.'s parental rights. A brief was also filed on behalf of S.C.M. and H.L.G., by their court-appointed attorney, adopting the arguments set forth by the state of Louisiana.
[8] In the transcript of the hearing, Ms. Petite's name is spelled "Tiffany Poteet." However, in her professional correspondence in the record, her name appears as "Tiffney Petite."
[9] B.E.M. also failed to financially support her children and to undergo the mental health evaluation and domestic violence counseling.